UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAMIAN MICHAEL MAY,

        Plaintiff,

v.

EMILY A. MINNICK et al.,

        Defendants.
_____/

Case No. 1:24-cv-383

Honorable Jane M. Beckering

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff may proceed *in forma pauperis* in this action. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's substantive due process and equal protection claims against Defendants for failure to state a claim.

## Discussion

**I.**     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues Michigan Sexual Abuse Prevention Program (MSAPP) Coordinator Emily A. Minnick, Classification Director Unknown Smolenski, and Parole Board Members Carolyn Burns and Brian Shipman.

Plaintiff alleges that he has never been charged or convicted of a sex-based offense and that he pleaded guilty to assault with intent to do great bodily harm less than murder. (ECF No. 1, PageID.3.) Plaintiff states that his present incarceration stems from a domestic assault he committed on his former girlfriend while intoxicated after she informed him that she was pregnant and refused to have sex with him. (*Id.*) Plaintiff states that he choked his former girlfriend and struck her in the face several times, which resulted in her suffering a missing tooth, a laceration above her eye, and bruising. (*Id.*) Plaintiff also states that at the time of his offense, he had been working as a "live web cam model for adult porn," who had sex with men and women for money. (*Id.*, PageID.5-6.)

Plaintiff states that he was transferred to IBC in late September 2023. (*Id.*, PageID.3.) Plaintiff asserts that he was never interviewed by Defendant Smolenski regarding his classification or program referrals, even though policy required such an interview. (*Id.*, PageID.4-5.) Plaintiff was interviewed by his counselor and was told to sign a CSX-175, which incorrectly indicated that he was "SERVING FOR OR HISTORY OF: SEX OFFENSE." (*Id.*, PageID.5.) Defendant Smolenski signed off on Plaintiff's Program Classification Report as if policy had been followed. (*Id.*)

Plaintiff alleges that Defendant Minnick subsequently approved Plaintiff's classification and enrolled Plaintiff in MSAPP. Plaintiff contends that Defendant Minnick should have entered an override to omit him from the program because he had never committed a sexual offense. (*Id.*)

2

In October of 2023, Plaintiff was enrolled in the first phase of MSAPP, known as the Treatment Readiness for You (TRY) program. (*Id.*) On the first day of TRY, Plaintiff asked the instructor, non-party Mrs. Thompson, why he was enrolled in the program since he had never been charged with or convicted of a sex-based offense. Mrs. Thompson responded that she could bring his PSI (Pre-sentence Investigation Report) to the next group session and read the pertinent section to the entire group. At the next group session, Mrs. Thompson arrived with Plaintiff's PSI in hand and asked Plaintiff if he wanted her to read aloud to the group the section pertaining to Plaintiff's enrollment in MSAPP. Plaintiff said that he did want her to read the section and Mrs. Thompson read:

> [Plaintiff] has had various jobs over the years. He currently is a live web cam model for adult porn. He advised that he makes adult porn videos for people who can watch him, but he cannot see them. He stated that this encounters [sic] many things and he engages in sex with women and men for money.

(*Id.*, PageID.5-6.)

On November 16, 2023, Plaintiff was interviewed for parole by Defendant Burns, who informed Plaintiff that he was going to be denied parole because of his failure to participate in and complete MSAPP (Michigan Sexual Abuse Prevention Program). This decision was supported by Defendant Shipman and Plaintiff was denied parole on December 7, 2023. (*Id.*, PageID.3.)

Plaintiff signed up to use the law library to research whether he had a liberty interest in not being labeled as a sex offender for purposes of being enrolled in the MSAPP. (*Id.*, PageID.5-6.) Plaintiff finally received access to the law library in December of 2023, one month after he completed TRY. (*Id.*, PageID.6.) Plaintiff states that he discovered an Eastern District case that supported his assertion that he should not be forced to participate in MSAPP in order to be eligible for parole. (*Id.*) Plaintiff's grievance on the matter was denied as untimely. (*Id.*) As a result of

3

being required to enroll in TRY, Plaintiff is constantly questioned and scrutinized about his underlying case, placing suspicion on Plaintiff that he is a sex offender, and making him susceptible to harassment and physical assault. (*Id.*)

Plaintiff states that Defendants violated his right to procedural due process, substantive due process, and equal protection under the law. Plaintiff seeks to have this case certified as a class action. Plaintiff also seeks injunctive and declaratory relief.

## II.   Request for Class Action Certification

Plaintiff seeks an order certifying this case as a class action. The purposes of class action suits are judicial economy and the opportunity to bring claims that would not be brought absent the class action because it might not be economically feasible to bring them as individual claims. *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 650 (6th Cir. 2006). Federal Rule of Civil Procedure 23, which governs class certification, provides that:

> One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder . . . is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The four prerequisites for class certification are respectively referred to as "numerosity, commonality, typicality, and adequacy of representation." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *see also*, *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006).

Thus, for a case to proceed as a class action, the Court must be satisfied on the grounds enumerated above, including the adequacy of class representation. *See* Fed. R. Civ. P. 23(a)(4). Plaintiff bears the burden of establishing the right to class certification. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996).

It is well established that *pro se* litigants are "inadequate class representatives." *Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citations omitted); *Ziegler v. Michigan,* 59 F. App'x. 622, 624 (6th Cir. 2003) (recognizing that "[g]enerally pro se prisoners cannot adequately represent a class" (citing *Fymbo v. State Farm & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000))); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (recognizing that "[*p*]*ro se* prisoners generally may not bring class action lawsuits concerning prison conditions" (citing *Dean v. Blanchard*, 865 F.2d 257 (6th Cir. 1988) (table); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975))); *Palasty v. Hawk*, 15 F. App'x. 197, 200 (6th Cir. 2001) (concluding that "pro se prisoners are not able to represent fairly [a] class" (citing *Fymbo*, 213 F.3d at 1321; *Oxendine,* 509 F.2d at 1407)); *Marr v. Michigan,* No. 95-1794, 1996 WL 205582, at *1 (6th Cir. Apr. 25, 1996) (noting that "an imprisoned litigant who is not represented by counsel may not represent a class of inmates because the prisoner cannot adequately represent the interests of the class" (citing *Oxendine*, 509 F.2d at 1407)). Because Plaintiff is an incarcerated pro se litigant, the Court finds that he is not an appropriate representative of a class. Therefore, the Court will deny Plaintiff's request for class certification.

### III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Procedural Due Process

#### 1. Right to Parole

To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006). To the extent that Plaintiff raises a procedural due process claim based on a right

to parole, he fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Thus, any failure or refusal by the Michigan

Parole Board to consider Plaintiff for, or grant him, parole does not implicate a federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

### 2. Right to Not Be Classified as a Sex Offender

Plaintiff states that following his transfer to IBC, he was interviewed by his counselor and was told to sign a CSX-175, which incorrectly indicated that he was "SERVING FOR OR HISTORY OF: SEX OFFENSE." (*Id.*, PageID.5.) Defendant Smolenski signed off on Plaintiff's Program Classification Report as if policy had been followed. (*Id.*) Following this classification, Plaintiff was enrolled in TRY.

Plaintiff states that he was told he would not be eligible for parole if he did not complete MSAPP. Where parole is not a protected liberty interest, a condition or voluntary prerequisite of parole cannot enjoy due process protection either, unless that condition or prerequisite is independently worthy of due process protection. *See Catanzaro v. Harry*, 848 F. Supp. 2d 780, 793-94 (W.D. Mich. 2012) ("Thus, the conditions of Plaintiff's parole[, including participation in a sex-offender treatment program,] implicated Plaintiff's right to due process only if they; (1) exceeded the sentence imposed on Plaintiff 'in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,' *Sandin*, 515 U.S. at 484 (citing *Vitek v. Jones*, 445 U.S. 480 (1980)); or (2) imposed 'significant and atypical hardship in relation to the ordinary incidents of prison life.' *Id.*").

In *Catanzaro*, this Court concluded that a prisoner convicted of a sex offense was not deprived of due process where he was compelled to participate in sex-offender treatment as a condition of parole. The prisoner, Catanzaro, compared his plight to that of the plaintiff in *Vitek*:

> In *Vitek*, prison officials determined that the plaintiff, a state prisoner, was suffering from a mental illness or defect that could not be treated at the prison facility, so

8

> they transferred him to a mental health hospital for treatment under a state statute allowing the transfer of such prisoners. *Vitek*, 445 U.S. at 484. The plaintiff claimed that the prison officials violated his right to due process because their determination of illness was not accompanied by adequate notice or a hearing. *Id.* at 485. The Court agreed, finding that state law and practice gave the plaintiff an objective expectation that he would not be transferred unless a proper determination was made regarding his mental state. *Id.* at 489-90. Even apart from state law and practice, however, the plaintiff was entitled to due process because the consequences that he suffered were "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Id.* at 493. The Court noted that "involuntary confinement to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." *Id.* Confinement to a "mental hospital" for treatment involves more than merely a loss of freedom; it also has a stigmatizing effect on the treated individual. *Id.* at 492. The Court concluded that, while "the restrictions on the prisoner's freedom of action at the [hospital] by themselves might not constitute the deprivation of a liberty interest . . . the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id.* at 494.

*Catanzaro*, 848 F. Supp. 2d at 794. This Court determined that "requiring a convicted sex offender to undergo rehabilitative treatment related to that offense is wholly different than requiring a prisoner to undergo involuntary health treatment." *Id*. at 795. This Court recognized a distinction between imposing sex-offender classifications and requiring sex-offender treatment of those convicted of sex offenses and imposing that classification and requiring such treatment of those who were not. *Id*. at 796. The Sixth Circuit Court of Appeals recently acknowledged the existence of that line as well, but that court drew the line at a slightly different place. In *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518 (6th Cir. Apr. 28, 2020), the court reversed the district court's dismissal of a claim like Plaintiff's where the plaintiff had "neither been convicted of a sex crime nor accused of any sexual wrongdoing while incarcerated." *Harper*, 2020 WL 4877518, at *1.

Plaintiff's position in this case is similar to that of the plaintiff in *Harper*. Plaintiff has not been convicted of a sex offense and—at least based on the absence of any admission in the complaint—has not been accused of any sexual wrongdoing while in prison. Plaintiff asserts that

9

as a result of Defendants' improper classification of him, he has been repeatedly questioned about his case by other prisoners and sometimes has been blatantly ostracized. Plaintiff also states that he is subject to suspicion of being a sex offender, which makes him susceptible to harassment and physical assault.

In *Harper*, the Sixth Circuit noted:

> This circuit has not addressed the question of whether a prisoner has a liberty interest in not being classified as a sex offender. But other circuits that have considered the issue have held that prisoners do have such a liberty interest. *See Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010) (holding that prisoners have a liberty interest in not being labeled as a sex offender and forced into treatment, and thus are entitled to adequate process before prison officials take such action); *see also Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (per curiam) (holding that a convicted attempted murderer "retains a 'residuum of liberty' that would be infringed by classification as a sex offender without complying with minimum requirements of due process") (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)); *Neal v. Shimoda*, 131 F.3d 818, 829–30 (9th Cir. 1997). We need not consider the merits of this issue of first impression. At this juncture, the district court is best positioned to consider this issue in the first instance. Still, at the motion to dismiss stage, considering the foregoing authorities, Harper's complaint contains sufficient factual matter to support a plausible claim that his procedural-due-process rights were violated when the defendants classified him as a sex offender. The district court therefore erred by summarily dismissing this claim.

*Harper*, 2020 WL 4877518, at *3.

Because the Sixth Circuit has recognized that the improper classification of a prisoner as a sex offender may implicate a liberty interest, Plaintiff's due process claim based on this conduct is not clearly lacking in merit. Therefore, at this point in the litigation, Plaintiff's procedural due process claims regarding his classification as a sex offender will not be dismissed.

**B.    Substantive Due Process**

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the

10

government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

In this case, Plaintiff claims that classifying him as a sex offender and requiring him to participate in MSAPP is shocking to the conscience because he has never been convicted of or charged with a sex offense. Here, while being identified as a sex offender and being required to complete MSAPP could clearly have a stigmatizing effect, the Supreme Court has stated that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," and that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Cty of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Here, Plaintiff claims that the decision to classify him as having

11

committed a sex offense was based on his legal profession as a live web cam model for adult porn and/or his sexual liaisons with men or women for money. However, Plaintiff also concedes that he violently assaulted his girlfriend after she refused to have sex with him. Therefore, the requirement that Plaintiff complete MSAPP to be eligible for parole does not constitute conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.

In addition, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest not being classified as a sex offender. Moreover, to the extent that Plaintiff is claiming that classifying him as a sex offender affected the conditions of his confinement, the Eighth Amendment would provide an explicit source of constitutional protection to Plaintiff. *Harper*, 2020 WL 4877518, *4.[1]

---

[1] In *Harper*, the Court stated:

> The Eighth Amendment forbids prison conditions that "involve the 'wanton and unnecessary infliction of pain,' or are 'grossly disproportionate to the severity of the crime.'" *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To establish an Eighth Amendment violation, a plaintiff must show that "(1) a single, identifiable necessity of civilized

For the reasons set forth above, Plaintiff's substantive due process claims will be dismissed.

### C. Equal Protection

Plaintiff makes a conclusory assertion that Defendants violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that a fundamental right is implicated in this case or that he is a member of a suspect class; his claims therefore are not subjected to strict scrutiny.

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has

---

human existence is being denied (objective prong) and (2) the defendant prison official acted with a sufficiently culpable state of mind [subjective prong]." *Id.* To satisfy the objective prong, the plaintiff must demonstrate "extreme deprivations" that deny "the minimal civilized measure of life's necessities" and are not merely "[h]arsh and uncomfortable." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Rhodes*, 452 U.S. at 347). To satisfy the subjective prong, the plaintiff must establish that prison officials acted with "deliberate indifference," that is, by knowing of and disregarding "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994). Harper failed to state an Eighth Amendment claim because he alleged no facts showing either that he was deprived of a necessity of life, or that any of the defendants were deliberately indifferent to a serious risk to his health or safety. *See Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

*Id.*, 2020 WL 4877518, *4. Plaintiff in this case fails to allege any facts showing that Defendants were deliberately indifferent to an excessive risk to his health or safety was that he was denied the minimal civilized measure of life's necessities. Therefore, Plaintiff fails to state a claim under the Eighth Amendment.

13

been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (emphasis removed) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.") (emphasis in original). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905

F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff in this case fails to allege any facts showing that he was treated differently than any other similarly situated prisoner. Therefore, Plaintiff's equal protection claims are properly dismissed.

### D. State Law Claims

To the extent that Plaintiff is asserting violations of state law, the Court notes that claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court notes that in determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, because Plaintiff continues to have federal claims against Defendants, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's substantive due process and equal protection claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's procedural due process and state law claims against Defendants remain in the case.

An order consistent with this opinion will be entered.

Dated:     July 5, 2024                                       /s/ Jane M. Beckering
                                                              Jane M. Beckering
                                                              United States District Judge